UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CORNELIUS BENNETT and EARLIE FUSE,

Plaintiffs,

v.

CITY OF CENTREVILLE, TOWNSHIP OF CENTREVILLE, COMMONFIELDS OF CENTREVILLE, MARIUS "MARK" JACKSON, CURTIS MCCALL, LAMAR GENTRY, and DENNIS TRAITEUR,

Defendants.

Case No. 20-cv-530-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiffs Cornelius Bennett and Earlie Fuse for injunctive relief, which the Court considers as seeking a preliminary injunction (Doc. 2). The defendants have responded to the motion (Docs. 39 & 40), and the plaintiffs have replied to those responses (Doc. 44).

## I. Background

The plaintiffs, each of whom owns a home in either the City or Township of Centreville, Illinois, complain that the defendants, various municipalities and municipal employees and officials, have been indifferent to the fact that a sub-par stormwater and sewage disposal system causes stormwater and raw sewage to invade the plaintiffs' homes and yards. The backups can take an extended period of time to go away, and in the meantime, prevent the plaintiffs from using parts of their properties. The backed up water has also caused damage to their homes. They filed this lawsuit alleging a claim under 42 U.S.C. § 1983 for an unconstitutional taking in violation of the United States Constitution's Fifth Amendment Takings Clause, applicable to the

defendants through the Fourteenth Amendment (Count I). They also raise a claim under the Takings Clause of the Illinois Constitution, Article I, § 15 (Count II).

## II. Preliminary Injunction Standard

With their complaint, the plaintiffs filed a motion for a preliminary injunction seeking an injunction requiring the defendants to take action to stop the invasion of stormwater and sewage onto their properties. "[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (internal quotation marks omitted). A party seeking a preliminary injunction "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). If the moving party is able to establish these three factors, the Court must then balance the harms to both parties using a "sliding scale" analysis, also taking into consideration the effect that granting or denying the injunction will have on the public interest. *Id.* "[T]he more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Id.* "A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Id.* at 661.

The plaintiffs contend they have satisfied all the requirements for a preliminary injunction. The defendants argue that the plaintiffs have no chance of success on the merits of their claims because they waited too long to sue. The plaintiffs have experienced the inundations for decades, and the defendant say the five-year Illinois catch-all statute of limitations has expired, and the defendants are subject to the equitable doctrine of laches. They also argue that

the "public duty rule" protects them. That rule says that a government's duty to provide public services runs to the community as a whole, not to any individual citizen, so they owe the plaintiffs no duty that could have been breached. Finally, the defendants argue that, by definition, the only proper remedy in Takings Clause claims like the plaintiffs' is monetary damages because those clauses require "just compensation" when property is taken.

The Court turns to the relevant factors justifying a preliminary injunction.

## III. Likelihood of Success on the Merits

### A. Takings Claims

The Takings Clause is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). However, not every taking requires a permanent physical occupation; government interference with property can also be a taking depending on the level of interference with the property owner's use and enjoyment of the property. *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 31-32 (2012).

There is no question that the plaintiffs have a reasonable likelihood of success on the merits of their takings claims under federal and state law. The United States and Illinois Supreme Courts have decided that temporary flooding of property and resulting property damage can be a compensable taking for which the property owners are entitled to just compensation depending on the degree of impairment of the property owner's use and enjoyment of the property caused by the flooding. *Arkansas Game & Fish Comm'n*, 568 U.S. at 33-34 ("Because

government-induced flooding can constitute a taking of property, and because a taking need not be permanent to be compensable, our precedent indicates that government-induced flooding of limited duration may be compensable."); *Hampton v. Metro. Water Reclamation Dist. of Greater Chi.*, 57 N.E.3d 1229, 1238 (Ill. 2016) (In considering whether temporary occupation by physical invasion of water constitutes a taking, "courts must look to the facts of each case to determine whether the property owner's use and enjoyment of the property has been diminished or destroyed."); *see, e.g.*, *Pineschi v. Rock River Water Reclamation Dist.*, 805 N.E.2d 1241, 1248 (Ill. App. Ct. 2004) (finding a direct physical invasion of plaintiff's home by sewage backup that forced him to vacate the premises for several days was a compensable taking).

"Flooding cases, like other takings cases, should be assessed with reference to the particular circumstances of each case. . . ." *Arkansas Game & Fish Comm'n*, 568 U.S. at 37. And the factors to consider to determine whether an invasion of water is a taking include: "the time and duration of the flooding, whether the invasion of the property was intentional or whether it was a foreseeable result of an authorized government action, and the character of the land and the owner's reasonable investment-backed expectations regarding the land's use." *Hampton*, 57 N.E.3d at 1239 (citing *Arkansas Game & Fish Comm'n*, 568 U.S. at 38-39).

Considering the foregoing factors, the Court finds that the plaintiffs have a likelihood of success on their takings claims. Their homes and yards have been invaded for substantial periods over decades by foreseeable flooding that contains noxious substances and that substantially impairs their use and enjoyment of their property. It is true that in *Hampton*, the water district caused the flooding and sewage backups by taking action to close locks and dams and to actively pump stormwater to cause the flooding, *Hampton*, 57 N.E.2d at 1332, rather than simply being inactive as the defendants in this case are alleged to have been. However, at the

moment the Court does not see this as a deciding factor leading to the conclusion that the plaintiffs have no likelihood of succeeding on the merits of their claims. It is simply a point to be weighed in the balance in ultimately deciding whether the flooding amounted to a taking.

B. Statute of Limitations/Laches

The defendants argue that the five-year statute of limitations for civil actions not otherwise specified, 735 ILCS 5/13-205, prohibits the plaintiffs from bringing this suit so many years after the flooding of their properties began. They argue that the plaintiffs' causes of action accrued at that time, so they needed to file their takings claims within five years of that date.

The Court is unconvinced by the defendants' arguments regarding this affirmative defense. Where a taking is caused by the cumulative effects of repeated, episodic events that approach the level of impairment to constitute a taking over a period of time, it is difficult to say when the actual taking accrued. For example, in *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012), the flooding occurred over a six-year period. Indeed, federal takings law establishes that a takings cause of action accrues when the gradual physical takings process has stabilized, that is, "when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined." *Banks v. United States*, 314 F.3d 1304, 1308 (Fed. Cir. 2003) (internal quotation marks omitted; taking by exacerbation of gradual shoreline erosion caused by federal government's construction of harbor jetties) (citing *United States v. Dickinson*, 331 U.S. 745, 749 (1947)).

The plaintiffs urge the Court to apply the continuing violation doctrine to the takings context. That doctrine holds, in the tort context, that a wrong is actionable as long as the last injury suffered in a series of wrongs was within the limitations period. *Roark v. Macoupin Creek*

*Drainage Dist.*, 738 N.E.2d 574, 584-85 (Ill. App. Ct. 2000) (finding that the statute of limitations in a tort suit involving delinquent performance of a drainage district begins to run from the date of the last injury). Furthermore, to the extent any single flooding event may have constituted a temporary taking, at least one of those events—in January 2020—occurred well within the limitations period the defendants allege applies.

Under any of these rules, there is a likelihood that the plaintiffs' takings claim is not barred by the statute of limitations or the doctrine of laches.

C. Public Duty Rule

The defendants claim that, regardless of the substantive merits of any takings claim, the plaintiffs cannot succeed in light of the "public duty rule." The Court rejects the defendants' argument in this regard. Illinois used to observe the common law public duty rule under which, absent some special duty to an individual, "a local governmental entity and its employees owe no duty of care to individual members of the general public to provide governmental services such as police and fire protection services." *Coleman v. E. Joliet Fire Prot. Dist.*, 46 N.E.3d 741, 743 (Ill. 2016) (citing *Huey v. Town of Cicero,* 243 N.E.2d 214 (Ill. 1968)); *accord Zimmerman v. Vill. of Skokie*, 697 N.E.2d 699, 702 (Ill. 1998). *Coleman* involved a wrongful death claim based on an alleged negligent and willful and wanton response of an ambulance crew to a 911 emergency call. *Coleman*, 46 N.E.2d. at 743. In that case, though, the Illinois Supreme Court "determined that the time has come to abandon the public duty rule and its special duty exception." *Id.* at 755. It reasoned that departing from the rule was appropriate since:

> (1) the jurisprudence has been muddled and inconsistent in the recognition and application of the public duty rule and its special duty exception; (2) application of the public duty rule is incompatible with the legislature's grant of limited immunity in cases of willful and wanton misconduct; and (3) determination of public policy is primarily a legislative function and the legislature's enactment of statutory immunities has rendered the public duty rule obsolete.

*Id.* at 756. The Illinois Supreme Court thought that policy decisions about when a municipality should be liable for its wrongdoing are better left to the legislature through enactment of immunity laws. *Id.* at 757-58. It thus abolished the public duty rule and the special duty exception in view of public immunity statutes. *Id.* at 758.

Because Illinois has abolished the public duty rule, the defendants cannot invoke it to show the plaintiffs have no likelihood of success on the merits. The Court expresses no opinion on the relationship, if any, between takings claims, like the ones in this case, and concepts of public duty or tort immunity normally applicable in tort.

**IV. Adequacy of Remedy at Law**

Although the Court has found the plaintiffs have a reasonable likelihood of success on the merits of their takings claims, they also have an adequate remedy at law. Indeed, takings claims, by their very nature, seek "just compensation"—that is, money—for property taken. As the Illinois Supreme Court has noted, the Illinois and United States Takings Clauses do not prohibit a government from taking private property but only require that the government pay for it. *Forest Preserve Dist. v. W. Suburban Bank,* 641 N.E.2d 493, 498 (Ill. 1994). Accordingly, money damages are adequate for this takings action.

It is true that a number of Illinois courts have stated that an injunction may be appropriate in a takings case. *See LaSalle Nat. Bank & Tr. Co. v. City of Chi.*, 470 N.E.2d 1239, 1247 (Ill. App. Ct. 1984) ("An injunction is the proper remedy only when an unlawful appropriation of land is attempted for use by a public corporation which has not acquired this right by condemnation or otherwise."; no taking found) (citing *Chi. Title & Trust Co. v. Village of Burr Ridge*, 354 N.E.2d 61, 62 (Ill. App. Ct. 1976)). Those courts, however, were facing situations where the government had not formally condemned property where it was required to do so, or

where the government's use of a restrictive public easement exceeded the purposes for which the easement was granted. Where condemnation is required and a government proposes to act without pursuing a condemnation action, an injunction might be appropriate to prevent action until an appropriate time. But that is not the situation in this case. Indeed, the plaintiffs *do not* want the government to take their properties by eminent domain. They just want it to stop the flooding of their homes. Money damages, however, are an adequate remedy for their takings claims.

In fact, almost uniformly the cases cited by the plaintiffs involve takings claims where the plaintiffs sought monetary compensation. *See Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 29 (2012) ("[T]he Commission filed the instant lawsuit against the United States, claiming that the temporary deviations from the Manual constituted a taking of property that entitled the Commission to compensation."); *Hampton v. Metro. Water Reclamation Dist. of Greater Chi.*, 57 N.E.3d 1229, 1239 (Ill. 2016) ("[P]laintiffs state that they are seeking 'compensatory damages for the value of lost possessions and the cost of repairing their homes. . . .'"); *Pineschi v. Rock River Water Reclamation Dist.*, 805 N.E.2d 1241, 1244 (Ill. App. Ct. 2004) ("Counts V and VI alleged a taking of plaintiff's property and sought compensation under, respectively, the fifth amendment to the federal constitution. . . and . . . the state constitution."); *see also Tzakis v. Berger Excavating Contractors*, (Ill. App. Ct. 2019) (no injunctive relief sought).

And the cases they cite involving potential injunctive relief asserted tort claims for which injunctive relief was a potentially remedy. *See Pineschi*, 805 N.E.2d at 1243 ("Count III claimed that defendant created a nuisance and asked the trial court to enjoin defendant from discharging materials onto plaintiff's property."); *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531,

534 (1987) (injunction available under the Alaska National Interest Lands Conservation Act). The plaintiffs have filed no tort claims—or any other type of claims for which injunctive relief is available—in this case.

Because the plaintiffs have failed to establish that there is no adequate remedy at law, one of the three threshold showings necessary to justify a preliminary injunction, the Court does not reach the stage of balancing the harms.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** the plaintiffs' motion for a preliminary injunction (Doc. 2).

**IT IS SO ORDERED.**
**DATED: October 15, 2020**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**