**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS**

CORNELIUS BENNETT
EARLIE FUSE,

           Plaintiffs,

    vs.

CITY OF CENTREVILLE, ET AL.,

           Defendants.

Case No.: 3:20-cv-00530-DWD

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
<u>MAY 5, 2025 STATUS REPORT</u>**

Defendants' May 5, 2025 Status Report (Doc. 193) provided this Court with a detailed and accurate update regarding the progress made by the City and U.S. EPA and Illinois EPA (the "Agencies"), to address the four issues referred by the Court. Contrary to Plaintiffs' assertions in their Response (Doc. 215), Defendants satisfied the requirements of the Court's January 5, 2024 Order (the "January Order") (Doc. 163), the Court's April 1, 2024 Order (the "April 2024 Order") (Doc. 173), and the Court's April 28, 2025 Order (the "April 2025 Order") (Doc. 192).

Plaintiffs' Response (Doc. 215) includes numerous inaccuracies and misrepresentations regarding the status of the City's progress in addressing the issues referred to the Agencies by the Court. Defendants therefore submit this Reply, pursuant to SDIL-LR 7.1(a)(4), based on the exceptional circumstance of correcting misstatements and inaccuracies in Plaintiffs' Response.[1]

Plaintiffs' Response (Doc. 215) is replete with inaccuracies and misstatements, including but not limited to the following:

- Plaintiffs incorrectly state that the City has abandoned any efforts to maintain stormwater ditches throughout the community. (Doc. 215 at 2.) In reality, the City maintains the ditches for which it is responsible on a periodic basis as

---

[1] This Court previously determined that a reply brief filed to "address numerous alleged inaccuracies" in Plaintiffs' response (Doc. 167) to the February 1, 2024 Status Report (Doc. 165) was appropriate and "helpful under such circumstances." (Doc. 174.)

necessary. In recent months, the City performed cleaning and regrading of ditches in the area of N. 82nd Street and the west side of N 80th Street. The City is also working in conjunction with the Heartlands Conservancy on a construction project to regrade Steiger Ditch. This project is being funded through a grant from Illinois EPA to Heartlands for the performance of the Prairie du Pont Watershed Study. The grant from Illinois EPA included implementation of certain projects to address flooding as recommended by the study. The Steiger Ditch project and installation of new culverts on N. 80th St. were proposed by that study and funded by Illinois EPA for approximately $500,000.

- Plaintiffs also misrepresent the state of the pump stations on Belleview and Bluff Streets, suggesting that they were in a state of disrepair and disarray on May 15, 2025– 10 days *after* the City filed its May 5, 2025 Status Report. (Doc. 215 at 2.) The red flashing lights on pump station panels do not necessarily mean that maintenance is required, but instead – at this location in particular – indicate a high water level alarm. The pump stations lights will flash red when there is heavy rain and flooding and/or backups from the East St. Louis system result in surcharging at the pump station. The sewer system was surcharging in the area of these pump stations on May 15, due to a backup from the East St. Louis sewer system. City staff inspected the Belleview and Bluff Street pump stations around the time of May 15 and confirmed the pump stations were working properly.

- Plaintiffs also allege that "[t]he pump station on N. 73rd Street is derelict; a utility pole leans against the fence surrounding the pump station, barely holding it all together," (Doc. 215 at 2.) but Plaintiffs fail to mention that this pump station is scheduled for repair in the near future. The referenced pump station is one of two pump stations on N. 73rd Street, both of which are scheduled to be repaired by the end of November 2025. (Doc. 193 at 21.)

- Plaintiffs also mispresent the status of the interceptor project, claiming it is "already behind schedule," based on conclusions in a technical memorandum prepared by CEA Engineers, P.C. ("CEA"), the engineering firm retained by Centreville Citizens for Change ("CCC"). (Doc. 215 at 4.) CEA's statements that the project is behind schedule are not backed by any technical support. The memorandum was also attached to comments submitted by CCC to the Agencies, both with regard to the Consent Decree and the preliminary design report for the interceptor project, before the Agencies provided written comments on the report to the City. Even so, the Agencies' comments do not include any statements suggesting that the project is unlikely to meet the deadline set forth in the Consent Decree or that it is already behind schedule, suggesting that the Agencies did not reach the same conclusion. A true and accurate copy of the Agencies' comments on the preliminary design report are attached hereto as Exhibit A.

- Plaintiffs misrepresent the City's efforts to identify an interim solution for N. 82nd Street. (Doc. 215 at 6.) At EPA's request, the City evaluated alternative solutions to minimize the impact of SSOs on the community in the area of N. 82nd Street until a permanent solution can be implemented. Due to the interim nature of the project and the City's limited resources, cost-effectiveness was a critical consideration in selecting an alternative. While the City considered alternatives to the installed solution, they were prohibitively expensive for an interim solution, and the selected remedy was therefore the preferred option under the circumstances.[2] While the project is less effective without the cap installed on the cleanout, it has nonetheless diverted flow that may have otherwise discharged into a residents yard on N. 82nd Street. Plaintiffs also claim this flow is diverted to "an unoccupied property," (Doc. 215 at 6) but, in actuality, the diverted flow discharges into a ditch along N. 80th Street at a location away from any residences or businesses. (Doc. 185-6 at 13.)

- Plaintiffs also distort the City's reporting on its efforts to obtain funds allocated to it by the Illinois General Assembly. On March 28, 2024, this Court held a status conference (Doc. 172) following the City's first status report filed on February 1, 2024. (Doc. 165.) During this status conference, Plaintiffs inaccurately represented to the Court that the State of Illinois allocated over $25,000,000 to the City for sewer infrastructure repairs and alleged that City efforts to obtain the funds were lacking and that there was insufficient transparency around the use of these funds. In direct response to Plaintiffs' concerns expressed during the March 28, 2024 status conference, the City has provided a comprehensive summary of the purpose, use, and status of the funds allocated by the General Assembly in the status reports submitted since that date. (Doc. 173.)

- Plaintiffs also request new relief, requesting the Court appoint an independent monitor to oversee the City's corrective efforts. (Doc. 215 at 1 and 11.) Plaintiffs did not seek this relief in the Amended Complaint and therefore are not entitled to the same. *See Daniels v. Brown*, No. 19-cv-1341-NJR, 2019 WL 7282020, * 6 (Dec. 27, 2019 S.D. Ill.) (denying request for relief because it was outside the scope of the Complaint). Moreover, making this request in a "response," while the case is stayed, is improper.

In sum, Plaintiffs' Response (Doc. 215) is replete with misstatements and misrepresentations regarding Defendants' compliance with the Court's Order and the City's progress in addressing the issues referred by the Court.

---

[2] Indeed, the cost to install on-site treatment (over $11 million), which the City considered, would nearly equal the estimated cost of the interceptor project (approximately $13 million).

3

**CONCLUSION**

For these reasons, Defendants respectfully request this Court reject Plaintiffs' claims in the Response, deny Plaintiffs' request for relief outside the scope of the Amended Complaint, and continue to stay this matter as the City continues to work in cooperation with the Agencies to finalize the Consent Decree and develop a response to public comments to the same, and as the City continues to implement the requirements of the AOC and the Consent Decree.

Respectfully submitted,

/s/ Erica M. Spitzig
TAFT STETTINIUS & HOLLISTER LLP
Erica M. Spitzig, *admitted pro hac vice*

TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone:  (513) 381-2838
Facsimile:  (513) 381-0205
espitzig@taftlaw.com

/s/  Heather M. Hawkins (with consent)
TAFT STETTINIUS & HOLLISTER LLP
Heather M. Hawkins, *admitted pro hac vice*

TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone:  (513) 381-2838
Facsimile:  (513) 381-0205
hhawkins@taftlaw.com

/s/  Philip L. Comella (with consent)
TAFT STETTINIUS & HOLLISTER LLP

TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone:  (312) 527-4000
Facsimile:  (312) 527-4011
pcomella@taftlaw.com

/s/  Mark C. Scoggins (with consent)
CROWDER & SCOGGINS, LTD.

CROWDER & SCOGGINS, LTD.

4

121 West Legion Avenue (physical address)
P.O. Box 167 (mailing address)
Columbia, IL 62236
Telephone:  (618) 281-7111
Facsimile:  (618) 281-7115
mscoggins@crowderscoggins.com

> */s/  Michael L. Wagner* (with consent)
> CLAYBORNE & WAGNER

CLAYBORNE & WAGNER
525 W Main St #105
Belleville, IL 62220
Telephone:  (618) 239-0187
Facsimile:  (618) 416-7556
mwagner@cswlawllp.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Nicole D. Nelson
Equity Legal Services, Inc.
nnelson@equitylegalservices.org

Kalila J. Jackson
Metropolitan St. Louis Equal Housing &
Opportunity Council
kjackson@ehoc-stl.or

Blake G. Meinders
Sprague & Urban
bmeinders@spragueurban.com

Kennedy Moehrs Gardner
Metropolitan St. Louis Equal Housing &
Opportunity Council
kmgardner@ehoc-stl.org

*/s/ Erica M. Spitzig*

6