**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

CORNELIUS BENNETT and
EARLIE FUSE,

      Plaintiffs,

v.

      Case No. 3:20-CV-00530-DWD

CITY OF CENTREVILLE, *et al.*,

      Defendants.

**DEFENDANTS' RESPONSE IN OPPOSITION**
**TO PLAINTIFFS' MOTION TO LIFT STAY**

Defendants City of Centreville, Commonfields of Cahokia Public Water District ("Commonfields"),[1] Township of Centreville, Curtis McCall, Marius ("Mark") Jackson, Lamar Gentry, and Dennis Traiteur (collectively, "Defendants") respectfully submit this response in opposition to Plaintiffs' Motion to Lift Stay. (Doc. 223).

This Court should keep the stay in place until it can evaluate which, if any, of Plaintiffs' claims remain viable. Specifically, this Court should consider whether any of Plaintiffs' claims have been mooted or otherwise resolved either as a result of the Consent Decree entered on January 20, 2026 ("Consent Decree") in *United States and State of Illinois v. City of Cahokia Heights, Illinois*, No. 3:24-cv-02591 (S.D. Ill. filed Dec. 10, 2024) ("Consent Decree Case," Doc. 48), or by other developments during the pendency of the stay, such that no further relief for those claims is available. Resolving that issue first will define the scope of any remaining controversy before the Court and reduce the amount of judicial and party resources expended.

---

[1] As the Court is aware, the City of Cahokia Heights ("Cahokia Heights" or "City") has yet to be substituted for defendants City of Centreville and Commonfields. As the current owner/operator of the relevant infrastructure, Cahokia Heights is the entity that is responsible for implementing repairs to the system.

To that end, Defendants suggest that while the stay is in place, the parties file cross-motions for summary judgment on whether any of Plaintiffs' claims have been mooted or otherwise resolved, either as a result of the Consent Decree or other developments during the pendency of the stay. In the alternative, if the Court concludes it needs a more developed factual record before reaching that question, it should still continue to maintain the stay, which will allow for the implementation of the Consent Decree and the building of the factual record.

## BACKGROUND

Cahokia Heights has been coordinating with relevant government agencies for years to provide much of the very relief Plaintiffs are seeking in their Amended Complaint. Plaintiffs request the following injunctive relief against Defendants:

1. An order restraining defendants City of Centreville and Township of Centreville from depositing or diverting stormwater onto Plaintiffs' properties;

2. An order restraining defendants City of Centreville, Township of Centreville, and Commonfields from depositing or diverting wastewater onto Plaintiffs' properties;

3. An order requiring defendants City of Centreville, Township of Centreville, and Commonfields pursuant to the recommendations of a credentialed and qualified party to whom all parties agree, immediate replacement of all pump stations with pumps to be working at adequate capacity at any locations designated as "fair," "poor," or "flooded" conditions as noted in Exhibit L to the Amended Complaint;

4. An order requiring defendants City of Centreville, Township of Centreville, and Commonfields to prevent deposit or diversion of wastewater from those systems onto Plaintiffs' properties, with the installation of new pump/lift stations including, but not limited to, the installation of sewer lines as replacement for pump stations where agreed upon by parties as necessary;

5. An order requiring Defendants to effectuate any further equitable relief, including the appointment of a monitor and an order requiring construction and improvement needed to repair damage to Plaintiffs' homes.

(Doc. 60 at 37–39). All five claims request injunctive relief, such as repairs to the sewer system, that will be addressed by the Consent Decree in whole or in part. As the Court is aware, Cahokia Heights has also been working with a variety of federal, state, and local partners to address, and procure funding for, regional stormwater and flooding issues. Taken together, these efforts have addressed much of Plaintiffs' requested relief.

Since at least September 2020, Cahokia Heights has been working with the U.S. Environmental Protection Agency ("U.S. EPA") and the Illinois Environmental Protection Agency ("Illinois EPA," and, together with U.S. EPA, the "Environmental Agencies") to remedy and eliminate sanitary sewer overflows ("SSOs") from its sewer system. On August 16, 2021, Cahokia Heights executed an Administrative Order on Consent with U.S. EPA, requiring Cahokia Heights to investigate the causes of SSOs and to take remedial measures, including updating its Capacity, Management, Operation and Maintenance Program, developing a Targeted Dry-Weather SSO Corrective Action Plan, and developing a Wet-Weather SSO Investigation Plan.

On January 5, 2024, the Court issued a stay in proceedings and referred the matter to the Environmental Agencies for evaluation and resolution of the injunctive portions of the Plaintiffs' Complaint. (Doc. 163 at 10–13). In issuing the stay, the Court recognized the Environmental Agencies' specialized ability to "fashion and oversee appropriate remedies to the physical infrastructure required to address the injunctive relief issues in Plaintiffs' Complaint." (Doc. 163 at 10).

Since the stay, the Environmental Agencies and Cahokia Heights reached a settlement, set forth in the Consent Decree on December 10, 2024, whereby Cahokia Heights agreed to implement an estimated $30 million in repairs to its sewer system necessary to reach compliance with the

Clean Water Act ("CWA") and the Illinois Environmental Protection Act.[2] The Court approved the Consent Decree among the United States, the State of Illinois, and Cahokia Heights on January 20, 2026. (Consent Decree Case, Doc. 48).

The Consent Decree maps out a formal, court-enforceable path to complete remediation of the sewer system, with the Environmental Agencies' oversight, semi-annual reporting, and stipulated penalties for non-compliance. There are two implementation phases. Phase I requires Cahokia Heights to, among other things, complete 79 early action capital improvement projects designed to remediate conditions causing SSOs, some of the same sewer system issues that Plaintiffs' injunction claims seek to address. Indeed, the City has completed repairs to nearly all of the pump stations designated as "fair," "poor," or "flooded" in the Amended Complaint, with final work being completed in 2026 pursuant to the Consent Decree. (Doc. 224 at 17-18). Cahokia Heights' work on the projects started before the Court entered the Consent Decree, and Cahokia Heights continues to make significant progress, as detailed in its February 2, 2026, status report. (Doc. 224). Phase II requires Cahokia Heights to further monitor the sewer system for SSOs, and to make any additional repairs and capacity improvements identified as necessary under plans approved by the Environmental Agencies.

In addition, throughout the pendency of the stay, Cahokia Heights has taken a variety of other steps that have addressed Plaintiffs' claims. Although under no obligation, Cahokia Heights repaired Mr. Bennett's private sewer lateral, at no cost to him, to assist with any issues specific to his property. (Doc. 167 at 15; Doc. 169 at 2). In addition, the Heartlands Conservancy, in cooperation with Cahokia Heights, completed $400,000 in repairs and upgrades to the City's stormwater infrastructure in the Ping Pong neighborhood, where Mr. Bennett lives. (Doc. 224 at

---

[2] U.S. Envt'l Prot. Agency, *Cahokia Heights 2024 Clean Water Act Case Summary*, EPA (2024), https://www.epa.gov/enforcement/cahokia-heights-2024-clean-water-act-case-summary.

20). These repairs included the installation of a new culvert under 80th Street and the stabilization and enhancement of the Steiger ditch. (*Id.*) Mr. Bennett lives on 80th Street near 82nd Street.

On Piat Place, across from Mr. Fuse's residence, Cahokia Heights installed a new power service and inlet with an automatic pump. (Doc. 185 at 20). Cahokia Heights also installed a stormwater discharge pipe from Piat Place to North Kings Highway for as-needed emergency stormwater pumping during heavy rain events. (Doc. 165 at 12).

More broadly, Cahokia Heights has continued to employ crews to clean ditches, inlets, and culverts of debris twice per week in various locations. (Doc. 224 at 19–20). Cahokia Heights also maintains crews on standby, with pumps, during wet weather events to immediately address any issues. (Doc. 193 at 25). Many of these efforts have been in coordination with the U.S. Army Corps of Engineers, Illinois Department of Natural Resources, Illinois EPA, the Illinois Emergency Management Agency, the Federal Emergency Management Agency, and St. Clair County. (Doc. 193 at 25).

## ARGUMENT

**A.    The Court Should Extend the Stay to Evaluate Whether Plaintiffs' Claims Remain Viable in Light of the Consent Decree and Other Work Conducted During the Pendency of the Stay.**

Rather than simply lifting the stay and re-starting the litigation, the Court should first determine whether Plaintiffs' claims have been rendered moot or otherwise satisfied during the pendency of the stay. Only after the Court decides the effect the Consent Decree—and other work that occurred during the pendency of the stay—have on Plaintiffs' claims can it define the scope of any remaining controversy and determine what, if any, further relief may even be warranted if Plaintiffs prove their claims. Defendants suggest cross-motions for summary judgment on the

5

precise issue of whether the Consent Decree, or other efforts undertaken during the stay, moot or otherwise satisfy Plaintiffs' claims.

### 1.    *Mootness is a Threshold Jurisdictional Question that Should be Decided Before the Case Proceeds.*

Mootness is a jurisdictional issue that should be decided before the stay is lifted. *See Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609, 623 (N.D. Ill. 2019). Entry of the Consent Decree, and other efforts by Cahokia Heights during the stay, have undoubtedly mooted some, if not all, of Plaintiffs' claims because the Consent Decree provides the same relief Plaintiffs are seeking, and the underlying issues have otherwise been resolved during the stay.

Claims for injunctive relief are moot when it "becomes impossible for a federal court to provide any effectual relief" to the plaintiff." *Ruggles v. Ruggles*, 49 F.4th 1097, 1099 (7th Cir. 2022) (quoting *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 376 (2019)). Claims are also moot "once the threat of the act sought to be enjoined dissipates." *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006). The mootness doctrine "implements Article III's Case or Controversy requirement," and thus "subsists through all stages of federal judicial proceedings." *Ruggles*, 49 F.4th at 1099 (cleaned up). Accordingly, courts have a "constitutional obligation" to address mootness when it arises. *Id.* Claims for injunctive relief can be deemed moot and dismissed even though other claims in the same action are not moot. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 394 (1981).

Entry of a U.S. EPA-negotiated consent decree may render moot claims for injunctive relief that seek the same corrective measures. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 529 (5th Cir. 2008) (entry of a consent decree rendered CWA citizen suit claims moot). If the Consent Decree eliminated any prospect that the Court could provide any further effectual relief,

then some or all of Plaintiffs' claims no longer present a live controversy and must be dismissed before the case proceeds further.

Similarly, voluntary actions taken by a defendant can render claims moot, when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." But courts accord greater weight to voluntary actions by government entities, like the City, because public officials are presumed to act in good faith. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env. Serv. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Cahokia Heights' good-faith, voluntary actions make it clear that many of the issues allegedly impacting Plaintiffs' properties are not reasonably expected to recur, and to the extent the Court cannot grant Plaintiffs any further effectual relief, Plaintiffs' claims should be dismissed as moot.

### 2. *Deciding the Adequacy of the Consent Decree Mid-Stay Avoids Conflicting Orders.*

Evaluating the Consent Decree's impact on Plaintiffs' claims before proceeding with any further litigation is also consistent with the Court's desire to avoid conflicting orders. (Doc. 163). In its order staying the case for referral to the Environmental Agencies based on primary jurisdiction, the Court explained:

> [S]hould the Agencies be successful in compelling the remediation of the issues raised in the injunctive portion of Plaintiff's Complaint, the Court will alleviate any risk of subjecting the parties to conflicting orders from the Court and the administrative Agencies, or worse, from subjecting the parties to a Court Order that does not fully address the practical, and potentially changing, needs of the infrastructure repairs.

(Doc. 163 at 10). The Environmental Agencies were successful in compelling remediation of the Cahokia Heights sewer system. Lifting the stay now, and reopening full merits litigation before the Court has determined the Consent Decree's effect on the Plaintiffs' claims, could risk the very outcome the Court sought to avoid: parallel, potentially inconsistent orders aimed at the same

issues. *Ohio Valley Env't Coal., Inc. v. Hobet Mining, LLC*, No. CIV.A. 3:08-0088, 2008 WL 5377799, at *7 (S.D.W. Va. Dec. 18, 2008) ("The Court would not substitute its own plan for compliance in place of [the agency's] without evidence that the agency's plan was ill-conceived or developed in bad faith."); *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 761 (7th Cir. 2004).

By contrast, first resolving whether the Consent Decree has mooted or otherwise satisfied Plaintiffs' claims allows the Court to decide whether any additional relief is necessary or even legally available. If the Consent Decree fully satisfies Plaintiffs' requested relief, there will be no occasion for further litigation. If it does not, the Court can narrowly define what remains without undermining the Environmental Agencies' plan. There is only one sewer system at issue in both cases.

### 3. *Judicial Economy is Best Served by Evaluating Which Claims Remain Viable Before the Case Proceeds.*

Maintaining the stay while the Court evaluates the viability of the Plaintiffs' claims also promotes judicial economy. Re-opening litigation into all issues without first evaluating mootness would force the parties and the Court to waste resources litigating whether the Plaintiffs have a right to relief that may ultimately be unavailable. Conversely, by addressing the viability of Plaintiffs' claims now, while the stay remains in place, the Court can better define the scope of any remaining controversy should any part of the case be re-opened. If the Court determines that some or all of Plaintiff's claims have been mooted, resources can be focused on the genuine remaining issues, avoiding unnecessary litigation over relief that has already been given.

**B.      Alternatively, the Court Should Continue the Stay to Evaluate the Effectiveness of the Environmental Agencies' Chosen Remedy.**

The Court should have sufficient information based on the Consent Decree terms and events to date to evaluate whether Plaintiffs' claims remain viable. To the extent further factual development is needed, the Court should continue the stay to allow Consent Decree implementation to proceed and the record to develop. Judicial economy is still best served by maintaining the stay because, as explained above, the adequacy of the Consent Decree should be adjudicated before the case reopens to avoid unnecessary and costly efforts.

Plaintiffs are in no way prejudiced by keeping the stay in place. Work continues on the sewer system and regional flooding and stormwater issues while the case is stayed. Also, Plaintiffs do not claim there are immediate threats of further harm to their properties. If there are any such issues, Plaintiffs are free to bring a renewed motion to lift the stay and the Court can reevaluate the circumstances then. Any concern regarding damages is, by itself, not sufficient to justify lifting a stay. *See Melton Props., LLC. v. Illinois Cent. R.R. Co.*, 539 F. Supp. 3d 593, 612 (N.D. Miss. 2021).

CONCLUSION

For the forgoing reasons, Defendants respectfully request that the Court continue the stay to allow additional briefing or further factual development.

9

Respectfully submitted,

/s/ Erica M. Spitzig
TAFT STETTINIUS & HOLLISTER LLP
Erica M. Spitzig, *admitted pro hac vice*

TAFT STETTINIUS & HOLLISTER LLP
301 E. 4th Street, Suite 2800
Cincinnati, Ohio 45202
Telephone:  (513) 381-2838
Facsimile:  (513) 381-0205
espitzig@taftlaw.com

/s/ Heather M. Hawkins (with consent)
TAFT STETTINIUS & HOLLISTER LLP
Heather M. Hawkins, *admitted pro hac vice*

TAFT STETTINIUS & HOLLISTER LLP
301 E. 4th Street, Suite 2800
Cincinnati, Ohio 45202
Telephone:  (513) 381-2838
Facsimile:  (513) 381-0205
hhawkins@taftlaw.com

/s/ Philip L. Comella (with consent)
TAFT STETTINIUS & HOLLISTER LLP
Philip L. Comella

TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone:  (312) 527-4000
Facsimile:  (312) 527-4011
pcomella@taftlaw.com

/s/  Mark C. Scoggins (with consent)
CROWDER & SCOGGINS, LTD.

CROWDER & SCOGGINS, LTD.
121 West Legion Avenue (physical address)
P.O. Box 167 (mailing address)
Columbia, IL 62236
Telephone:  (618) 281-7111
Facsimile:  (618) 281-7115
mscoggins@crowderscoggins.com

10

/s/  *Michael L. Wagner* (with consent)
CLAYBORNE & WAGNER

CLAYBORNE & WAGNER
525 W Main St #105
Belleville, IL 62220
Telephone:  (618) 239-0187
Facsimile:  (618) 416-7556
mwagner@cswlawllp.com

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 17, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Nicole D. Nelson
Equity Legal Services, Inc.
nnelson@equitylegalservices.org

Kalila J. Jackson
Metropolitan St. Louis Equal Housing &
Opportunity Council
kjackson@ehoc-stl.or

Blake G. Meinders
Sprague & Urban
bmeinders@spragueurban.com

Kennedy Moehrs Gardner
Metropolitan St. Louis Equal Housing &
Opportunity Council
kmgardner@ehoc-stl.org

*/s/ Erica M. Spitzig*